# THE TROY FIRE INSURANCE COMPANY, Plaintiffs in Error.

## vs.

# HENRY CARPENTER, Defendant in Error.

ERROR TO THE CIRCUIT COURT OF WALWORTH COUNTY.

A declaration in an action of *assumpsit* upon a policy of insurance against loss by fire, need not set out verbatim the by-laws of the company annexed to the policy.

An averment in a declaration upon a policy of insurance, stating that the fire occurred on the second day of February, 1851, and then alleging that "immediately, and within a reasonable time after the burning and destruction of the insured property, to wit, on the third day of February, 1851, he (the said plaintiff) forwarded to the secretary of the said Fire Insurance Company, and which was duly received by said company, a plain and unequivocal statement, verified by his affidavit, of the time and origin of the fire," &c., is a sufficient statement of a section of the by-laws annexed to the policy, and reading as follows: "All members sustaining loss or damage by fire shall forthwith give notice thereof to the secretary, and within thirty days after said loss deliver, per mail or otherwise, a particular account of such loss, verified on oath or affidavit."

Clauses in a policy which do not affect the plaintiff's right of action, need not necessarily be stated in the declaration.

An allegation in a declaration upon a policy of insurance, that at the time of the fire there was no insurance on the property, not notified to the company, and that, after the making of the policy by the company, no other insurance was effected upon the property, is a sufficient averment that there was no other insurance upon the property, not notified to the company at the time the company insured the plaintiff.

Matters of defence need not be anticipated, and averred in the declaration.

The count alleged that in consideration, &c., "the defendants then and there promised the plaintiff to insure," &c. *Held*, that this was a contract of insurance, and not an agreement to insure.

Where the by-laws annexed to a policy of insurance require notice of loss to be given to the secretary of the company, a letter of the latter to the plaintiff, acknowledging the receipt of the notice of loss and the preliminary proof, and stating that the same is satisfactory, is sufficient proof of the time of notice of the loss, and the time within which it was forwarded.

Where the by-laws annexed to a policy of insurance provide that it is the duty of the secretary of the company "to answer all communications in behalf of the company," admissions of the secretary, made in such correspondence, as to the time and sufficiency of notice of a loss, bind the company.

The acknowledgment of the receipt of a premium note in a policy of insurance, is *prima facie* evidence of the same, and it is no ground for a nonsuit that the contents of the premium note have not been proved except by the policy.

When a party objects to the reading of an instrument in evidence on the ground of variance, he must point out to the court, on the trial, wherein the variance consists. A general objection on the ground of variance will not be heard in this court, unless it was specifically urged in the court below.

*Winsor & Smith*, for the plaintiff in error.

*Smith & Keyes*, for the defendant in error.

*By the Court*, COLE, J.  This was an action of assumpsit upon a policy of insurance, brought by Carpenter against the Troy Fire Insurance Company, in the Walworth county Circuit Court.  The declaration contains two special counts upon the policy.  The company pleaded the general issue, and gave notice of special matter.  On the trial, Carpenter offered and read in evidence his policy, which was objected to upon several grounds, that will be noticed in the disposition of the cause.  He also read in evidence, a letter sent him by the secretary of the company, to prove that notice of loss and preliminary proofs were given and made out according to the requirements of the policy. Several depositions were likewise read, proving that the property was destroyed by fire on the 2d day of February, 1851, within the lifetime of the policy, and that the property was worth $4,000 or $5,000.

Carpenter then rested his case, when a motion for a nonsuit was made and overruled.  In the defence, the company read in evidence depositions tending to show that the fire resulted from the gross negligence of Carpenter, or his servants, and also tending to show an alteration or change of occupation of the building insured, which increased the hazard, the building having taken fire from burning long wood in a stove, with the stove door open ; such fire being used day and night to dry the plastering in the ball-room of the tavern, at the time newly plastered.  Upon the evidence and charge of the court, the jury found a verdict for Carpenter.  Thereupon, a motion was made in arrest of judgment, which was also overruled.  Neither the depositions, nor letter of the secretary, are embraced in the bill of exceptions, and we can only determine what they contained from the printed case and briefs of counsel.

A great number of points was made by the counsel for the

company on the trial in the court below, and are assigned for error here. For the sake of convenience and brevity, those that are deemed material, will be disposed of in considering:

1st. The objections to the sufficiency of the declaration.

2d. The objections to the sufficiency and nature of the evidence in support of the action, and

3d. The objections to the charge of the court.

The first count of the declaration, to which several objections are taken, sets out in the past tense the policy, and in the precise terms in which it is made. It likewise states the regulations indorsed upon the policy and forming a part of it, and alleges, we think, with proper and sufficient averments, a full compliance with all precedent conditions and warranties. It does not, to be sure, set forth in *hæc verba* any one of the by-laws annexed to the policy, nor do we conceive it to have been necessary so to do.

The one particularly relied upon by the counsel for the company as necessary to have been set forth in the declaration, is section 13, and a compliance with that one is substantially alleged. By-law 13 is as follows:

" All members sustaining loss or damage by fire, *shall forthwith give notice thereof to the secretary*, and within thirty days after said loss, deliver per mail, or otherwise, a particular account of such loss, verified on oath or affidavit." This requires immediate notice of the loss to be given to the secretary, and a sworn statement of the particulars of the loss to be furnished within thirty days, according to the requirements on the back of the policy. The count of the declaration which we are now considering, *avers* that the building insured was totally destroyed by fire at Fort Winnebago, to wit: at Troy, in said county of Walworth, on the 2d day of February, 1851, while the insurance was in force, and that said fire was purely accidental, &c.; of which matters and things the company at the time and place aforesaid had no notice; and further avers, that " immediately and within a reasonable time after the burning and destruction of said insured property, to wit: on the 3d day of February, 1851, he (the plaintiff) forwarded to the secretary of said Troy Fire In- surance Company, and which was duly received by said company, a plain and unequivocal statement, verified by his affida-

vit, of the time and origin of the fire, &c.," so that the time of giving notice of the loss, and furnishing a detailed and verified statement thereof, is specifically alleged to have been given the next day after the fire.

That allegation as to the performance of this condition precedent mentioned in by-law 13, must be deemed sufficient to answer the strictest rule of pleading.

Undoubtedly Carpenter's right of action depended upon his forwarding by mail or otherwise, the verified statement of his loss; and perhaps it was also necessary for him to aver that he had done so within the thirty days next after the fire; and has he not done so? Certainly he has.

Obviously there is a verbal inaccuracy in the following language in the first count: "to which said policy were attached and made a part of the same, certain requirements to be complied with by the plaintiff, in case of loss, and which said requirements were to be forwarded to the secretary, verified by affidavits, &c.," instead of stating that a plain and unequivocal statement of the matters mentioned in the requirements, was to be forwarded. That objection to this count, if valid at all, would only be good upon special demurrer. It cannot be considered good on a motion in arrest of judgment.

Neither do we deem this count of the declaration bad, for the reason that it does not embrace the memorandum contained in the by-laws, to the effect that the company would not be liable for damage caused by fire originating from depositing by the insured, ashes or embers in wooden vessels. We see no more reason for inserting that memorandum in the declaration, than there is for averring that the company might annul the policy upon the neglect or failure of any member to pay an assessment within thirty days after it had been demanded, as is provided by section 16 of the by-laws, and that the policy had not thus been abrogated.

Clauses which do not affect the plaintiff's right of action, need not necessarily be stated. *Cotterill vs. Cuff,* 4 *Taunt.* 285; 2 *Saund.*

Other objections are taken to this count; as for instance, that it does not allege, that at the time the company insured, there was no other insurance upon the property, not notified to the

company. It does, however, contain an allegation, that at the time of the fire there was no insurance on the property, not notified to the company, and that, after the making of the policy by the company, no other insurance was effected upon the property. It was not necessary for Carpenter to anticipate and remove in his declaration every possible exception, answer or objection which the company might oppose to him. *Stph. Plead.* 395; 1 *Chitty Plead.* 222.

It is contended that the second count does not set forth any cause of action, and several points are taken predicated upon that position. That count is much like the first, and follows the precedent given in the note on page 387, 2 *Greenl. Ev. 3d edition.* If that count had not the sanction of so high authority as Prof. Greenleaf, we should have considered it good in respect to the objection taken. After the usual averments, that Carpenter was on the 30th day of December, 1850, at Fort Winnebago, &c., owner of a certain tavern and dwelling of the value of $3,000, it states, that the Troy Fire Insurance Compamy on the same day and at the same place aforesaid, in consideration of a premium in money then and there paid to them therefor by the plaintiff, and of his premium note then and there made and delivered, made a policy of insurance upon said tavern and dwelling-house, and thereby then and there promised the plaintiff to insure $1,000 thereon, &c. It is now insisted that this is nothing more than a count upon a *promise to·insure*, and that it does not allege that the company did insure the property. It seems to be stated as explicitly as language will admit of, that the company made a policy of insurance upon the property, and thereby then and there promised the plaintiff to insure $,1,000 thereon. What more can be required?

Another objection taken to this count is not sustained : that is, that it does not contain any allegation that a statement of the loss was made out and forwarded to the secretary, &c. That certainly is a mistake. The allegation in the count is as follows:

" And the plaintiff avers that afterwards, and before the time limited in said policy, to wit, on the 2d day of February, 1851, the said tavern and dwelling was purely accidentally, and without fraud, consumed by fire, of which loss the plaintiff, as soon thereafter as possible, gave notice to the secretary of the com-

pany, and delivered to him a particular account thereof, and verified by his oath," &c. In short, we are of the opinion "that upon the application of the strictest rules of pleading, both these counts are good; at all events, that they are so on a motion in arrest of judgment, which is the only step taken to bring their sufficiency before us. To hold otherwise would subject the science of special pleading to all the reproach that from time to time has been heaped upon it, and deservedly render it a by-word for technicalities and hair-splitting, alike unworthy the name of science, and useless in the investigation of truth.

Various grounds were relied upon in moving for a nonsuit, but the principal one appears to be, that the proof was defective as to the time that Carpenter gave notice of the loss, and of the time he forwarded a particular statement of such loss, substantiated, as required by the conditions of the policy. The evidence upon that point seems to have been a letter written by Medbury, the secretary of the company, to Carpenter, in which he acknowledges the receipt of the notice of loss, and the preliminary proofs in reference to the same, and states that he is satisfied as to the notice and proofs, and will lay them before the directors, or an acting committee. It is to be regretted that this letter of the secretary was not embraced in the bill of exceptions, so that we might have seen and judged of its import. However, we will take it for granted that the contents are substantially set forth by the counsel for the plaintiff in error, and then the question arises: was not that letter entirely competent to prove the time that notice of the loss was given, and the preliminary proofs forwarded by Carpenter? We think it was. By the very terms of the by-laws annexed to the policy, notice of loss and preliminary proofs as to the notice, circumstances and extent of it, were to be forwarded to the secretary. He was the general corresponding officer of the company, and the person to whom all communications upon the business of the company were to be addressed. Who then could acknowledge the receipt of these communications as properly as he to whom they were required to be sent? Nay, more; if the notice had not been given in time, or if the proofs furnished were insufficient, the secretary should have apprised Carpenter of it, so that the defect might have been obviated or supplied. Ought the com-

pany to be permitted to object to the notice or the proofs, after their agent has informed the insured that he was satisfied with them? In *Ætna Fire Insurance Co. vs. Tyler* (16 *Wend.* 401), Chancellor Walworth says: "The law is well settled in this state, that if there is a formal defect in the preliminary proofs required by the policy, or the custom of the place, and which could probably have been supplied, had any objection been made by the underwriters to the payment of the loss upon that ground, if the insurers do not call for the document, or make an objection on the ground of its absence or imperfection, but put their refusal to pay distinctly upon some other ground, the production of such further preliminary proof will be considered as waived."

The same doctrine is advanced in the later case of *O'Neil vs. The Buffalo Fire Insurance Co.* (3 *Coms.* 128).

The rule is certainly a reasonable and just one. But it is said that the admissions of the secretary upon this point could not bind the company; that he was acting beyond the scope of his authority. We cannot assent to that proposition. One of his duties, as specifically set forth in the by-laws, is, "to answer all communications in behalf of the company, and to perform other duties pertaining to the office of secretary." What earthly use could there be in his answering communications in behalf of the company, if his answer, when given, amounted to nothing—did not at all bind the company? Why do the company require the preliminary proofs to be sent to him, if he has no authority to act upon them? We do not suppose the company intended to entrap those who might insure with them, by requiring the preliminary proofs to be sent to one who had no authority to act for them in the premises; yet such would be the irresistible conclusion, if the position of the counsel for the plaintiff in error be correct. But the position is utterly untenable. In cases of this kind where the notice of loss and the preliminary proofs are required to be sent to the secretary, he must be considered as the agent of the company, clothed with full authority to act for them, in acknowledging their receipt and judging of their sufficiency. *Story on Agency, chap.* 61; *Potter vs. The Ontario and Livingston Mutual Insurance Co.*, 5 *Hill*, 148; *McEwen vs. The Montgomery Co. Ins. Co.*, *ibid*, 104.

The Troy Fire Insurance Company vs. Carpenter.

He represents the company, acts in their stead, and good faith and common justice require that his admissions as to the sufficiency of proof of loss, should bind them.

The nonsuit was contended for upon another ground; because the contents of the premium note mentioned in the policy, was not proved. Why was it any more necessary to prove the contents of this note than it was to prove the amount of premium paid? The company acknowledge the receipt of both by the policy, and the policy proves both *prima facie*. They constituted the consideration, and the whole consideration, for the insurance. It is not denied but that the money was paid and note given as set forth in the policy. The rule of pleading to which the counsel has referred, and cited numerous authorities, is an elementary one, and must be perfectly familiar to every lawyer. It is, that accuracy is required in the statement of the consideration in actions of assumpsit, and that the consideration stated in the declaration must be proved to the extent alleged; otherwise there is a variance between the contract declared on and the one proved. We are, however, really incapable of seeing the application of that principle of law to this case; we do not suppose there was any controversy about what was the consideration, and we must take that mentioned in the policy as the correct one, until it is denied.

It is furthermore insisted, that the nonsuit should have been granted on account of the variance between the declaration and proof, in respect to the time for which the property was insured: that both counts allege, that the time was one year from the 20th of December, 1850, while by the policy it appeared to be one year from the 30th day of December, 1850.

The counsel for the defendant in error states, that there was no such variance, and that there has been a clerical mistake in copying the record and bill of exceptions. It seems very strange that so material a variance should have escaped the attention of counsel upon the trial, had it really existed. But whether the variance really existed or not, we think it is too late to raise the objection here; it was not made in the court below. It is true that the reading of the policy in evidence was objected to upon several grounds, but those objections applied to the sufficiency of the declaration, and have been substantially passed upon in

the observations already made. It was not objected to on the ground of variance in the time for which the property was insured. Now, we think it a safe, correct and reasonable rule of practice, that when a party objects to the reading of an instrument in evidence on the ground of variance, he should point out to the court in what the variance consists. They should not be permitted to object generally for a variance, and leave the court to discover it, if it can. Had the variance been pointed out in the court below, it might, perhaps, have been obviated by an amendment of the declaration upon terms. At all events, it is a sufficient answer to the objection now, that the objection for variance was not made and insisted upon on the trial. *Whitney vs. Sutton*, 10 *Wend.* 413; *Driggs vs. Dwight*, 17 *ibid*, 74; *Mosher vs. Lawrence*, 4 *Denio*, 421.

The foregoing observations have disposed of some parts of the charge of the court which were excepted to. It is contended, however, that there was error in the following part of the charge:

"If the evidence showed that the building, when insured, was in an unfinished state, and was in the process of being finished, and the use of the stove for the purpose of drying the plastering, was for a temporary purpose, and not for a permanent change of the business or purpose for which the house was built, and insured, to wit: a tavern and dwelling-house; there was nothing in the policy which avoids it for that reason."

It is insisted that the above charge is erroneous, and we suppose section 12 of the by-laws is mainly relied upon to show that the company is not liable for a loss occasioned by a fire from a stove used in drying plastering, as this was.

The 12th section of the by-laws provides, "Whenever any alteration shall be made in any building insured, which increases the risk or hazard of the same, so as to increase the rate, such alteration shall avoid the policy, unless the insured give an additional premium according to the rate of exposure. This company will not be responsible for any loss that occurs by fire in consequence of repairing, finishing or building additions to any building insured in this company." The court submitted to the jury the question as to whether there had been any alteration or change of occupation of the building. We do not suppose there

was any such alteration in the building after it was insured, which increased the risk, or that the loss accrued in consequence of repairing, finishing or building any additions to the insured property. The fire, it is said, originated from the use of a stove in the ball-room, used for the purpose of drying the plastering in that room. It is insisted that there was great carelessness in the use of this stove, and that the fire resulted from this carelessness. Suppose these facts were clearly established by the evidence, and we have no means of knowing whether they were or not, how would that affect Carpenter's right to recover? "There can be no doubt that one of the objects of insurance against fire is, to protect the insured from loss, as well against his own negligence, as that of his servants and others, and therefore the simple fact of negligence in either, however great in degree, has never been held to be a defence in such policy." *Gates vs. The Madison Co. Mutual Ins. Co.*, 1 *Selden*, 478. We suppose Carpenter had a right to build a fire in a stove in the ball-room, unless there was something in the policy forbidding it, and it was quite immaterial whether the fire was for drying the plastering or warming the room for the comfort of his guests. In cold weather it is absolutely necessary to use stoves, or have fires in taverns and dwelling-houses. That is the common ordinary hazard or risk, covered by the policy.

The company did not suppose they were insuring a tavern in which no fires were to be kept; if they had they should have stipulated to that effect. In the absence of any such provision in the policy, forbidding the use of stoves, we cannot hold that the use of one carelessly, negligently, would defeat the action. The counsel seems to think it could not be used for the purpose of drying plastering in the ball-room. Why not? If Carpenter had a right under his policy to keep a fire in the ball-room for any purpose whatever, why could he not use it for drying the plastering, as well as for anything else?

In *Dobson vs. Sotheby and others* (1 *Mood & Mal.* 90; 22 *Engl. C. L. R.* 260), a tar-barrel was taken into a barn which had been insured against fire, for the purpose of repairing the building by tarring it; no fire was ordinarily kept or made there. The terms of the policy required that no fire should be kept in buildings on which the rate of insurance in that case specified, was

paid. But a fire was lighted inside to boil the tar, and by the negligence of the plaintiff's servant the tar boiled over, took fire, communicated with that in the barrel, and the premises were burned down. The insured recovered. See also *Gates vs. The Madison Co. Mutual Ins. Co.*, 1 *Selden*, 479; *O'Neil vs. The Buffalo Fire Ins. Co.*, 3 *Coms.* 126.

The above cases clearly establish the principle that even where a loss occurs from carelessness in the use of fire temporarily used in a building where fire is not intended to be kept, that the insured may recover upon the policy.

We see no ground for granting a new trial, and the judgment of the Circuit Court is therefore affirmed.