### IN THE

# SUPREME COURT

### OF

## MINNESOTA.

### JULY TERM, 1871.

### GEORGE NEWMAN

### *vs.*

### THE SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY.

Defendant insured A. in the sum of $2,000. Afterwards its authorized agent, at A.'s request, endorsed the policy, " Payable in case of loss to G. N. (the plff.) to the extent of his claim," whereby the policy, thereafter, had the same force and effect as if A. had been, in the first instance, insured payable in case of loss to plaintiff to the extent of his claim; and in case of loss, plaintiff might maintain an action in his own name, without averring or prov· ing an assignment by A. to himself, assented to by defendant.

That P. who alone had a certificate of agency from defendant, and S. were

in partnership as insurance agents; that both received applications for insurance, and money in defendant's behalf, and made remittances of money to it; that S. had written its officers in the business transacted for it by the firm, and had seen and talked with them about it; that defendant knew that S. & P. were transacting such business in partnership; that when this policy was issued, it was in S.'s possession, signed by the officers of the company in blank, and was filled up by him, and countersigned by P., is evidence under *Stat.* 1868, *ch.* 22, *sec.* 7, and independently thereof, of the authority of S. to act for defendant.

A., and not plaintiff, was the proper person to make the proofs of loss. Defendant's agent having received them without objection, and forwarded them to defendant, who neither returned them, nor made any objection to them until the trial; this, however defective the proofs might have been, is a waiver of any objection thereto on that account.

Plaintiff was allowed at the trial to amend the complaint, by inserting an allegation that, " defendant, through its said agents, (P. & S.) accepted said proofs, received and retained the same. Defendant moved, thereupon, for leave to amend its answer, by denying that S. was at any time an agent of defendant, or authorized by it to act as its agent for the purposes mentioned in the complaint, or for the transaction of any business whatever for it. *Held,* that the motion was properly denied, in the discretion of the court below, such denial not putting in issue the allegations in plaintiff's amendment, because of which only, the defendant's request to amend had been made, and being equally irrelevant with respect to the rest of the complaint.

The policy provided, that it should not be assignable without the defendant's consent thereto indorsed thereon. A motion for leave to amend the answer, by alleging an assignment of the policy by A. to plaintiff, without defendant's knowledge or consent, based upon an affidavit which does not allege, as a fact, that the policy had been so assigned, and such fact not appearing by necessary inference from the facts therein stated, was properly denied.

*Held also,* that inasmuch as the policy for $2,000 was made payable to plaintiff, to secure his claim for $5,000, an assignment to him, for the same purpose, of all A.'s " right, title, and interest " therein, and " all benefit and advantage to be derived therefrom," would be not only unnecessary, but ineffectual, and would not, therefore, invalidate the policy, even if delivered without defendant's knowledge or consent.

Defendant was properly refused leave to amend its answer at the trial, so as to allege the existence of judgment liens on the premises at the time of A.'s application for insurance thereon. The judgments, being matter of record,

Newman v. The Springfield Fire and Marine Insurance Company.

were constructively known to defendant at the time of answering, and no offer was made to prove actual ignorance. Under an allegation in the answer, that the roof of the building insured, was defective, an offer, to prove what the condition of the building was, as a whole, was properly denied, on plaintiff's objection, as irrelevant.

Under a stipulation in the policy, that if the risk be increased by any means, whatever, within the control of the insured, the insurance shall be void, the assured is not to plead and prove, affirmatively, that it has *not* been thus increased, but if it *has*, it is matter of defense to be alleged and proved by defendant.

It being shown by defendant, that at the time of A.'s application for insurance, the property had been conveyed to plaintiff by tax deed, on sale for delinquent taxes, plaintiff was properly allowed to prove, in rebuttal, that the same was void by reason of irregularities in the assessment of such taxes, there being proof that the plaintiff paid said taxes at A.'s request, and promise, that if he would do so, he would repay him with interest, which he had afterwards done, and was in ignorance at the time of the application, of the existence of said tax deed, which plaintiff had taken at his attorney's suggestion, at the time of payment of said taxes.

Plaintiff, whether chargeable with notice of such irregularities, or not, and even if the tax deed were good in law, would be in equity only a trustee of the title for A., whose representation to the insurer, that the property was his, would be true, and, therefore, such dealings of plaintiff and A., could not estop plaintiff from showing that said tax deed was not good, whether the parties, at the time, knew that fact or not.

An instruction that, "where a contract of insurance is entered into upon a verbal representation, which is false, it must be shown to have been material, and fraudulently made, and that if not true, the contract would not have been entered into. But if the representation be substantially true, or the party has not been prejudiced, or deceived by it, the law will hold the policy good," states a correct general rule of the law of fire insurance.

One Samuel Stanchfield was insured by the defendant in the sum of $2,000, against the loss of a certain building by fire. The defendant afterwards, at the request of said Stanchfield, by its agent indorsed the policy of insurance as follows: "Payable in case of loss to George Newman to the extent of his claim." A loss having occurred, the plaintiff brought this suit in the district court for Hennepin county, to recover of the de-

fendant the amount of the insurance.   Issue was joined and a trial had resulting in a verdict for the plaintiff.   The defendant moved for a new trial, and its motion being denied, it appeals from the order denying the same to this court.   The opinion of the court fully states all the material facts in relation to the points discussed and decided.

HAUSER & ROBINSON, for Appellant.

ATWATER & FLANDRAU, for Respondent

*By the Court.*—RIPLEY, CH. J.—At the trial of this cause, the defendant objected to the admission of any evidence under the complaint, for the alleged reason that the same does not state facts sufficient to constitute a cause of action, in not averring an assignment of the policy set out in the complaint, and according to its terms, nor a waiver of this condition of the policy, and that the complaint does not allege notice of the amount of the plaintiff's claim, or that he had any claim at all, at the time of the loss.

Some other objections are made to the sufficiency of the complaint, but they seem to us to be unimportant, and not to require discussion.   As to those above mentioned, as explained in the defendant's brief, they are, that as the policy upon which the action is brought is a contract with Samuel Stanchfield, the plaintiff must show an assignment by Stanchfield to himself, and defendant's consent thereto, since the policy provides that it shall not be assignable without defendant's consent.   This assertion, however is the result of a misapprehension on the defendant's part.

The complaint alleges that after the making of the policy, defendant by E. R. Pierce, its duly authorized agent thereto, at Stanchfield's request, made this endorsement on the policy,

viz.: "Payable in case of loss to George Newman to the extent of his claim.   Minneapolis, February 1, 1870.   E. R. Pierce, Agent."   This was a mutual agreement between the parties, that the policy should be thus payable thereafter, and the policy thereafter, had the same force and effect, as if Samuel Stanchfield had been thereby, in the first instance, in terms, insured against such loss on the property in question, payable in case of loss to said Newman, to the extent of whatever claim he then had on said premises.   "The legal relation of a party to whom by the terms of the policy the money is to be paid in case of loss, is most like that of the assignee of a chose in action after notice of such assignment to the debtor, and a promise by him to the assignee, to pay him, and such assignee, or such promisee, may maintain an action in his own name for the money when due."   *Sanford vs. Mechanics' Mutual Fire Ins. Co.* 12 *Cush. p.* 549.

The complaint, accordingly, alleges, in substance and effect, that the claim of said plaintiff in the premises was $5,000, secured by mortgage thereon; that Stanchfield, in consideration thereof, on said 1st February agreed with plaintiff, that in case of loss, the insurance should be paid him, and notified defendant, who by said indorsement agreed so to do.

Part of this might, of course, have been omitted; the statement that the defendant, at Stanchfield's request, thus endorsed the policy covering all of it, but a statement of the fact that Newman had a claim on the building at the time of the indorsement, and the loss, to an amount exceeding the amount insured.

It was as unnecessary, too, for plaintiff to notify defendant of his claim, at the time of the loss, or before action brought, as it would have been for Stanchfield to have notified it that he still owned the property.

The defendant had notice at the time of the endorsement, that Newman had a claim.

The amount he could recover would depend on the amount of his claim at the time of the fire, but by no means on defendant's knowledge in that regard.

As to the objection, that the verdict is not justified by the evidence, and is contrary to law and evidence, our examination of the case satisfies us, that it discloses, which is sufficient, evidence reasonably tending to support the verdict, unless the exceptions taken by defendant to the admission of material portions thereof were improperly overruled.

Whether this was so, or not, will appear upon an examination of the alleged errors in law occurring at the trial, now to be considered.

The first is the admission of any evidence under the complaint, which has already been passed upon.

The objection to the admission of evidence being overruled, said Stanchfield testified that " Mr. Stone, of Pierce & Stone, made out the policy, and Mr. Pierce signed it. Pierce & Stone were doing business together as insurance agents." The last statement was objected to, " as irrelevant, it appearing on the face of the policy and complaint, that E. R. Pierce alone was the agent of the defendant."

The complaint alleges that the policy was countersigned by Pierce, " the then only authorized agent *for that purpose*," of defendant, and also that in Feby., 1869, defendant by said Pierce, its duly authorized agent *thereto*, endorsed the policy as above stated ; but the complaint also alleges, that notice of loss was given to defendant through "its authorized agents," Pierce & Stone, and that the proofs of loss were furnished defendant by delivering them to " its authorized agents " Pierce & Stone, which proofs were made in accordance with the direction of defendant through " its duly authorized agents, aforesaid'.

Newman v. The Springfield Fire and Marine Insurance Company.

The defendant's objection would seem, therefore, to have been unfounded in fact, and properly overruled.

The witness went on to state that the endorsement was written by Stone, and signed by Pierce ; that he was absent from home at the time of the fire, Nov. 19th, in St. Louis, and immediately on getting home he met Mr. Stone in the street. He was then asked, " What did Mr, Stone at that time say to you, if anything, about the loss ? " Which was objected to as irrelevant, for the reason already considered, and for the further reason, that there was no evidence that Mr. Stone was an agent of the defendant.

As to this, Stanchfield had also testified that Stone was in business with Pierce, and that he acted in the business of this insurance, and this company with him, Stone making out the policy, and drawing up the endorsement, and Pierce signing them.

Looked at in no other light, this, nevertheless, brings Stone within that provision of sec. 7. of ch. 22, of the laws of 1868, that one who in any wise, directly or indirectly, makes, or causes to be made, any contract or contracts, of insurance, for, or on account of any foreign insurance company, shall be deemed, to all intents and purposes, an agent of such company.

Aside from the statute, the authority of A. to act for B., may be inferred from the habit and course of dealing of A. and B., and the evidence above mentioned, was evidence of a course of dealing of the defendant, and Pierce & Stone, implying an authority to said firm, and consequently of each partner to act for it.

These policies, it seems, were executed in blank by the officers of the company, and entrusted to its agents to be filled up, and then delivered in pursuance and execution of the bargain made with the applicant, but not to be binding on the defendant, till countersigned by its authorized agent.

VOL. XVII.—16

It is evident that Pierce alone might be authorized to do this particular thing, and yet Pierce & Stone, or either of them, or any body else, be, at the same time, the defendant's agents in in other respects.

In this case, we have Pierce countersigning this policy; but this is, of itself, no proof that he was authorized to do so, or that he was the defendant's agent at all; for though the authority of A. to act for B. may be inferred from the habit and course of dealing of A. & B., it cannot be inferred from the acts of A. alone, though he assumes to act for B. *Starkie on Evd. Pt.* 4, *p.* 55–59.

But when Pierce & Stone are shown to be doing insurance business in company, and Stone is shown to have the policy in his possession, filling it up in accordance with the terms of the bargain, Pierce countersigning it, and Stanchfield getting it from Pierce & Stone, it is seen that the defendant has intrusted this policy to this insurance firm, for the purpose, as must be presumed, of enabling the firm to act for the company in the business for which such policy is necessary; proof, that is to say, tending to show a course of dealing between these parties, which necessarily implies an authority on the part of said Pierce & Stone to act for the defendant in such business.

Moreover, supposing that there was not at that time evidence in the case, of Stone's agency, under the statute, or otherwise, enough was afterwards given to prove him such, both under the statute, and as one whose acts, as such, the defendant was aware of, and had recognized. In addition to the proof in this regard hereinafter mentioned, Mr. Stone testified, that the defendant knew he was in the business with Pierce; that he had seen the officers of the company in Springfield, and "talked with them about our business, and they knew I was with Pierce. I had also written business letters to the company."

That evidence of the acts of the agent was given before

evidence of his authority, would not, therefore, be ground for disturbing the verdict, the latter being afterwards introduced during the trial. The objection was, therefore properly over-ruled.

The witness stated in answer to this question, in substance, that Mr. Stone told him to fill out proofs of loss, and defendant would settle it; that he need give no notice of loss; that one or two days thereafter he saw Stone again, at Pierce & Stone's office, and he gave witness blanks for said proofs, and told him as there was no justice living near, he would suggest a certain notary, to whom witness took said blanks, and after the proofs were made out, he handed them to Stone at said office.

To which statements of Stone, each, severally, the defendant objected, for the said reason above considered, and for the further reason, that it appeared "that this business had been, prior thereto, transacted with Pierce as the sole agent at Minneapolis, of the defendant."

From the case as settled, we are unable to perceive how this appears, for it contains nothing that we can discover in any manner tending to prove it. Inasmuch, however, as no further exception was taken, this further objection need not be considered.

Said proofs being produced, and identified, and offered in evidence, and it having been stated by the witness, that they were never returned to him, nor any objection made to them; that Pierce told him he had sent them to the defendant and he had never heard from them, and that Pierce, about two weeks after delivery, told him he would waive all notice of fire and loss; the defendant was here allowed to cross-examine witness as to said proofs, and the delivery thereof; and plaintiff was allowed, the defendant objecting, to re-examine him thereupon, and defendant excepted. As no reason was assigned for such objection, the exception cannot be urged, and indeed no reason

was given in this court, or, so far as we can see, exists for such objection.

The witness further stated, that he delivered the proofs to Stone, as already stated; that they were received, and not objected to at the time, nor at any time until then, and that they were not returned to witness. The defendant objected to each of these statements, as irrelevant and incompetent "for the reasons already stated."

The defendant at the close of its cross-examination, aforesaid, had specified sundry objections to the reception of said proofs, as not being such as were required by the terms of the policy alleged in the complaint, and not made or delivered by plaintiff.

It is unnecessary to add anything to what has already been said, to show that Stanchfield, and not plaintiff, was the proper person to make the proofs, and however defective they might be, the testimony went to show a waiver of any objection thereto, for that reason.

The plaintiff was here allowed to amend the complaint "to make the same correspond with the facts proved," and the amendment was made, "as appears in the complaint on file, and the defendant objected and excepted thereto."

No ground of objection being stated, the exception must be disregarded. Moreover taking the amendment to be such an one as is hereinafter stated, we can conceive no possible reason why the allowance thereof was not a proper exercise of the discretion of the court.

Evidence, that the witness notified Stone, when the premises became vacant, during the risk, was objected to, on the ground, that it in no way appeared, that he was an agent of the defendant, which objection, for the reasons already given, must be disregarded.

Defendant, after cross-examining this witness, asked leave to

Newman v. The Springfield Fire and Marine Insurance Company.

amend the answer "so as to deny that Mr. Stone was at any time an agent of the defendant, or authorized by the defendant to act as its agent, for the purposes mentioned in the complaint, or for the transaction of any business whatever for defendant, it appearing, that the plaintiff had amended his complaint in accordance with leave granted, by inserting the words 'that defendant through its said agents accepted said proofs, received and retained the same.'" The court refused, and defendant excepted.

It was matter of discretion with the court, to allow the amendment, or not; and that this was properly exercised in the present instance is evident from the fact, that the proposed amendment in no way put in issue the additional allegations of the complaint, aforesaid, because of which, only, the request to amend had been made, and is equally irrelevant in respect to the rest of the complaint.

The same witness being allowed to correct certain mistakes in his testimony, defendant objected to the several statements made on such correction, as irrelevant, and incompetent.

They were certainly, and plainly, material and competent; nor can we discover from the defendant's brief wherein they were supposed to be otherwise, unless the statement with respect to a vacancy, occurring in one room of the premises, that the witness gave notice of the vacancy to Pierce & Stone. may have been supposed by the defendant to have been obnoxious to one of the objections already considered, and seen to be groundless.

The defendant asked leave, on affidavit, to amend its answer, by alleging that Stanchfield assigned the policy, in writing endorsed thereon, to the plaintiff, without defendant's consent endorsed thereon, or otherwise given, to the assignment, and without notice to defendant, which was refused, and defendant excepted.

Pierce, the affiant, states, that "he had no information of any assignment of said policy, by the endorsement of said Stanchfield thereon, in writing, to the plaintiff, or otherwise, until after the commencement of the trial of this cause during this term of said court, and did not know of it till the production of said policy by the plaintiff on this trial. That said assignment was made, was kept from the defendant, and from his said agent until then   *   *   *   that the consent of the defendant has not been endorsed on said policy, nor has notice of said assignment, or the endorsement of defendant's consent, been waived," and the affidavit contains no other statement having any reference to an assignment. It lays no foundation, therefore, whereon to base a motion for leave to make the amendment; for it nowhere alleges, as a fact, that the policy was ever assigned, as in the amendment set out, nor does such fact appear by necessary inference.

The agent says he did not know of any assignment, as described, till the policy was produced in court; but of what he then or thereby became informed, he does not state. So the statement, "that said assignment was made; was kept from" defendant and himself till then, and they had no earlier knowledge of it, by no means necessarily implies that the policy had been assigned.

It does not necessarily follow that they had then become aware of any such fact, and so of the other statements above mentioned.

The affidavit is entirely consistent with such a state of things, as is stated by plaintiff to have really existed, viz.: that Stanchfield had executed an assignment on the policy, but finding it unnecessary, because of the endorsement, had never delivered it. Such, indeed, we think, on the whole case as settled, and the arguments of counsel, is the fair inference as to the matter of fact.

Newman v. The Springfield Fire and Marine Insurance Company.

It may further be remarked, however, that as this policy for $2,000 had been made payable to plaintiff, to secure a claim of $5,000, an assignment thereof by Stanchfield for the same purpose, " of all my right, title and interest" therein " and all benefit and advantage to be derived therefrom" (which this was) would be, not only unnecessary, but ineffectual, and therefore, even if delivered without the defendant's knowledge or consent, could not invalidate the policy.

The witness Stanchfield being recalled, and further examined by plaintiff, was further cross-examined, and the written assignment aforesaid on the back of the policy shown him, and defendant offered to prove its execution by the witness, and to offer it in evidence, to which plaintiff objected, and the objection was sustained, and defendant excepted.

The witness had in no way referred to any assignment in his direct examination. It was not, therefore, proper on cross-examination to prove its execution by him, still less, to offer it in evidence at that time, if proved; nor could it regularly be offered at all till pleaded.

The court was right, therefore, in excluding the evidence, if plaintiff objected.

Defendant in the course of its evidence, offered to show by the judgment docket, that there were judgment liens on the property at the time of Stanchfield's application, which was properly refused, because their existence is not alleged in the answer.

Defendant was also refused leave to amend, by alleging such fact. If the fact existed, as it was matter of record, it was constructively known to defendant when the answer was drawn, and no offer was even made, to prove, that it was not actually known. The defendant suggests no reason why the refusal was not a proper exercise of the discretion of the court, and we cannot perceive any.

Defendant offered to prove the condition of the building immediately previous to the fire, but it was excluded, on plaintiff's objection, and properly, as irrelevant.

The defence sets up, that the roof was defective, while the offer was to show the condition of the whole building. The defendant, however, says it was competent, because the complaint alleges performance of all conditions of the policy, and one of these is, that if the risk be increased by any means whatever within the control of the assured, the insurance shall be void.

The assured, however, is not to plead and prove, affirmatively, that the risk has *not* been thus increased. If it has been, it is matter of defence. The defendant, therefore, is confined to the proof of what it has alleged in this behalf. A subsequent witness, however, was asked and answered the same questions without objection.

Defendant also offered to describe a person seen on the premises the day before the fire, with a view of identifying him as a member of Stanchfield's family, but was not allowed so to do. The evidence is, apparently, wholly irrelevant, and though the object is suggested to have been, to affect Stanchfield with notice of the condition of the building, yet, as he had been proven to have been in St. Louis at the time, any other remark, than that the evidence was properly excluded, is unnecessary.

Defendant, to prove its denial that Stanchfield owned the property at the time of the application, and its allegation, that the policy stated that there was no other incumbrance than a mortgage described, when, in fact, the property had been conveyed to plaintiff by the county auditor, on sale thereof for delinquent taxes, introduced such tax deed.

Plaintiff, in rebuttal, was allowed, against defendant's objection, to prove, that the same was void, by reason of irregularities in the assessment of such taxes.

The objection stated was, that "the parties had estopped themselves from questioning the regularity of the sale and deed thereunder, having acted upon it, transacted business under it, and held it out to all the world as good."

The testimony was, that prior to said application, the plaintiff had paid said taxes at Stanchfield's request, and promise, if he would do so, he would repay him with interest, fearing, that otherwise, they would fall into hands that would make trouble; and that, at the time of payment, the plaintiff, at his attorney's suggestion, took said deed; that Stanchfield settled up the taxes with twelve per cent. per annum interest, Feb. 1, 1869, and the amount was included in said mortgage. Plaintiff testified that he did not inform Stanchfield at the time of the settlement, that he had said deed or tax title, and nothing was said about it, and that Stanchfield had no knowledge of it till after this suit was commenced, which Stanchfield confirmed.

Defendant had, on the other hand, introduced evidence tending to show, that he did know of the existence of the deed, at the time of the application.

Even if the plaintiff be not chargeable with notice of the condition of the assessment rolls, still, he could not, under his arrangement with Stanchfield, affect Stanchfield's title, by taking the deed. Whether the tax title were good or bad, in law; in equity, he would be Stanchfield's trustee; and Stanchfield, whether he knew what Newman had done, or not, would be only stating the truth, in saying, that the property was his. If the tax deed were then recorded, (which is neither alleged nor proved) it would be a cloud on his title, but that could not make him less the owner, nor is it an incumbrance. This being so, it is impossible to see how the plaintiff can possibly be estopped from showing that the tax deed was also void in point of law.

The defendant's suggestion, that he would be taking advan-

tage of his own wrong, is an entire misapplication of the maxim referred to.

If it would have been a fraud on Stanchfield, to take a tax title, it would not be taking advantage of his own wrong for plaintiff to show, that he did not get a tax title.

It is suggested, that plaintiff and Stanchfield had affirmed the regularity of the assessment, by the settlement aforesaid; but, in the first place, this assumes that they were aware of the irregularities therein, which was a question for the jury; and if they had both had actual knowledge thereof, even at the time of Newman's payment of the taxes, in what possible manner, can Stanchfield's repaying plaintiff, for a payment made at his request, estop plaintiff, as against this defendant, from showing, that the claim paid, was invalid against Stanchfield? If plaintiff, at Stanchfield's request, had thrown the money into the sea, Stanchfield would still be bound to reimburse him. In what way plaintiff's receipt of the money could, in that, or the present case, estop him, except from denying that he had received it, it is impossible to see.

The plaintiff was recalled by defendant, and further cross-examined, and stated, as he had already done, that the policy was taken by him as security for said $5,000, made up in part of said taxes and interest; whereupon defendant offered to show by said plaintiff, that said assignment was made in pursuance of said settlement, and to offer it in evidence, to which plaintiff objected; the objection was sustained, and defendant excepted.

It is unnecessary to say, that no such assignment having been pleaded, the plaintiff's objection was properly sustained.

No other objections were made to evidence, except some not noticed, because they were either based on grounds herein considered and seen to be untenable, or because no reason was assigned for them at the trial.

Newman v. The Springfield Fire and Marine Insurance Company.

The court instructed the jury, that "the policy in this case is the whole contract between the parties; the application not being in writing, is not a part of it, and is only a representation, and in order to invalidate the policy, must be shown, to have embraced a statement of a fact material to the risk, to have been untrue and fraudulently made," to which defendant excepted. In support of this exception, it is urged, in the first place, that the application is expressly referred to in the policy, and made a part thereof, and the warranty of the assured.

The defendant itself proved, that there was no written application; but it seems, that the policy was numbered 127, and that the printed part thereof contains the following (which is what defendant must have referred to,) viz.: Reference is had to assured's application No. 127, which is his warranty and a part hereof. Defendant says this must be intended to mean Stanchfield's verbal application. On the face of it, it was evidently printed in contemplation of a written application, and through oversight, was not struck out; but if it refers to Stanchfield's verbal application, the defendant fails to indicate which of the several applications for insurance, which they prove were made by him, is application No. 127, which is his warranty.

It cannot be seriously contended, that such language can be construed to include any, or all of the statements Stanchfield made at the several times he came to defendant's office, and wanted them to insure the property, or when, with the same object, he took the agent over the building.

The court was therefore correct in saying, that the application is not a part of the contract, and is only a representation; and also correctly stated, that, to avoid the policy, it must not only be untrue and fraudulently made, but material to the risk.

The defendant urges that the policy states, that the building had a good roof, and that this makes a statement of Stanchfield

to that effect a warranty by incorporation. If Stanchfield so stated, it would amount to nothing more than that the policy described the property in the same way that he did, a circumstance which could not change the character of the representation.

The defendant further objects, that the policy contains the following: " Applications for insurance must specify the construction and·materials of the building to be insured, &c.  *  * If any person insuring any building  *  *  *  in this office, shall make any misrepresentation or concealment, such insurance shall be void," and contends that thereunder it is necessary that every representation of Stanchfield must be as strictly construed as a warranty. But this clause of the policy contemplates statements in such a written application as thereinbefore described; not as defendant supposes, all that Stanchfield stated in his various interviews with the agent.

The authorities, cited by defendant as to the effect of such reference in the policy to representations, are not applicable; nor is it material with respect to this instruction, that some statements were in answer to inquiry. If it were so, and the instructions were on that account objectionable, as too general, the defendant should have asked for more specific instructions.

The court also instructed the jury, that " where a contract of insurance is entered into upon a verbal representation, which is false, it must be shown to have been material, and fraudulently made, so that if not true, the contract would not have been entered into ; but if the representation be substantially true, or the party has not been prejudiced or deceived by it. the law will hold the policy good," to which defendant excepted.

The instruction states nothing, but a correct general rule of the law of fire insurance, and we see no ground of exception to it. *2. Parsons, on Contracts, Book 3, ch. XIV.* · *Fire Ins. D.*

The court also read, said sec. 7, ch. 22, of Laws of 1868, to the jury, and instructed them, that under it they must determine whether Mr. Stone was not an agent of the defendant, in view of the testimony given by himself and Pierce, (Stone's evidence, so far as the question of the applicability of this statute is concerned, being as already stated, and also, that both received applications and payments, and both sent money to the defendant, but that Pierce held a certificate of agency and Stone could not therefore, sign any contracts for defendant, and defendant did not see his name, but knew he was in the business with Pierce; that he had written business letters to defendant, and had been in Springfield and seen the officers of the company, and talked with them about their business; and Pierce's evidence, being, that Stone and he were partners in the insurance business, and Stone was to do the writing; both did soliciting; that Stone, as well as Pierce, received money for and transmitted it to all the companies they had; that both received and transmitted money, and operated for defendant in Pierce's name,) and must also determine from the evidence, whether the last notice of vacancy was given, either to him, or Pierce, as an agent of defendant, and that if so, the notice was sufficient to bind the company; to which defendant excepted.

The instruction, however, was, obviously, entirely correct, as was the refusal to give the following instruction here asked for by defendant, which withdraws from the jury, what it was for them to decide; viz.: that as it appears on the face of the policy, and the several signatures thereon, as well as from other evidence, that Pierce alone was agent of the defendant at Minneapolis, and in the business of this policy transacted it as sole agent with Stanchfield, he was bound to recognize him as the only person authorized to receive notice, and do business for defendant with reference to this policy as its local agent.

The 4th, 9th, 10th, 11th and 15th requests of defendant, were

either refused, or given with some modification, to which refusals and modifications, exception was taken; but as the grounds of such exceptions, have been already considered and shown to be untenable, they need not be again noticed.

So far as appears from the case the 5th and 13th instructions asked by the defendant, were mere abstractions, for it discloses no evidence, to which they can by any possibility be deemed applicable; whether or not, therefore, they are correct as legal propositions, no exception lies to the refusal of the court, to give them.

The 12th instruction asked for, is in itself a justification for the refusal of the court to give it, in the light, without more, of the fact that the evidence was conflicting as to what Stanchfield's representations were.

The order denying a new trial is affirmed.