Williams, J.
1. The policy of insurance upon
which the plaintiff sought to recover in the action below, provides, among its many conditions, that “no liability shall exist under this policy for loss or damage in or on vacant or Unoccupied buildings, unless consent for such vacancy or non-occupancy be indorsed hereon. ” The answer alleges that the house insured by the policy was burned while it was unoccupied; and, though that allegation was denied, the court required the plaintiff to take the burden of proving that the building was occupied. That action of the court is assigned for error, and presents the first question for consideration.
The court went upon the theory that the provision of the policy above quoted constitutes a condition precedent, the performance of which was put in issue by the denial of the averments of the petition. In an action on a policy of fire insurance the plaintiff may plead generally, as was done in this case, the due performance of all the conditions precedent, on his part, and when the allegation is controverted the burden is undoubtedly upon him to show such performance. But we do not understand the clause of the policy in question to be a condition of that kind. An unexpired policy of fire insurance, which has been regularly issued, and remains uncanceled, must, in the absence of a showing to the contrary, be regarded as a valid and effective policy, upon which the assured is prima facie entitled to recover when the loss occurs, and the steps necessary to establish it have been taken; and hence, the conditions prece *18 dent in such a policy include only those affirmative acts on the part of the assured, the performance of which is necessary in order to perfect his right of action on the policy, such as giving notice and making proof of the loss, furnishing’ the certificate of a magistrate when required by the terms of the policy, and, it may be, in some cases, other steps of a like nature. Those clauses usually contained in policies of insurance, which provide that the policy shall become void, or its operation defeated or suspended, or the insurer relieved wholly or partially from liability, upon the happening of some event, or the doing, or omission to do some act, are not in any proper sense conditions precedent. If they may be properly called conditions, they are conditions subsequent, and matters of defense, which, together with their breach, must be pleaded by the insurer to be available as a means of defeating a recovery on the policy; and the burden of establishing’ the defense, if controverted, is, of course, upon the partyvpleading it. This precise question has not heretofore received the consideration of this court, but it has been raised in other states under various clauses of insurance policies. In the case of Lounsbury v. Insurance Co., 8 Conn., 459, the question was presented in an action on a policy of fire insurance which provided ‘ ‘that the insurers would not be liable for loss or' damage, happening by means of any invasion, insurrection, riot, or civil commotion, or of any military or usurped power; also, that if the building insured should be used, during the term of insurance, for any occupation, or for the purpose of storing therein any goods, denominated hazardous or extra-hazardous in the conditions annexed to the policy, (unless otherwise specially *19 provided for) the policy should cease and have no effect. ’ ’ It was held, these were not conditions precedent to the plaintiff’s right of recovery, but were matters of defense to be taken advantage of by pleading. The court in that case say: “All these conditions, if such they may be called, are inserted in the policy by way of proviso, and not at all as conditions precedent. They are introduced for the benefit of the defendants; and they must be taken advantage of, if at all, by pleading. ’ ’ In Newman v. Insurance Co., 17 Minn., 123, it is held that: “Under a stipulation in a policy, that if the risk be increased by any means, whatever, within the control of the insured, the insurance shall be void, the assured is not to plead and prove, affirmatively, thatfit has not been thus increased, but if it has, it is a matter of defense to be alleged and proved by defendant.” And in Daniels v. Insurance Co., 12 Cush., 426, Chief Justice Shaw lays down the rule in general terms, that if the insurers rely “either upon the falsity of a representation, or the failure to comply with an executory stipulation, it is upon them to prove it; and it is a question of fact for the jury, in either aspect.”
The following among other cases hold the same doctrine: Insurance Co. v. Carpenter, 4 Wis., 20; Mueller v. Insurance Co., 45 Mo., 84; Insurance Co. v. Crunk, 91 Tenn., 376; Spencer v. Insurance Association, 37 N. E. Rep., 617; Insurance Co. v. Sisk, 36 N. E. Rep., 659.
Any other rule would be highly inconvenient, if not impracticable.- The clause of the policy under which the defendant sought to be relieved from liability is but one of a great number of conditions, for the violation of any of which the insurer might *20 also claim to be relieved; and if the issue raised by the denial that the plaintiff performed all the conditions precedent on his part, imposed upon him the burden of proving there had been no violation of that particular clause, it also imposed upon him the burden of proving there was no breach of either of the other conditions, and for want of such proof as to either, he must fail, although in fact neither was the subject of any real controversy. This would be an unreasonable requirement, not only operating as a hardship on the plaintiff, but in most cases unnecessarily prolonging the trial. Especially should the rule be as we have stated it, under our code system of pleading, a prominent object of which was to so simplify the issues, that the evidence mig’ht be confined to the real matter of dispute, thus expediting the trial of causes and facilitating the business of the courts. The vacancy, or want of occupancy of a building is as much an affirmative fact, as its occupancy, and as capable of proof; and the burden upon that subject, under the issues in this case, was, we think, upon the defendant.
2. The court also erred in its direction to the jury. As we have seen, it was not incumbent upon the plaintiff to show the house was occupied; the burden being upon the defendant to prove that it was vacant and unoccupied. Beside, the evidence before the jury fairly tended to prove occupancy of the building within the meaning of the policy. It showed that the plaintiff, who was the owner of the property, occupied the building as a dwelling house when the policy was issued, and until the following March, when he rented it and placed his tenant in possession, who continued *21 therein until the next spring. It was then let to another tenant who moved his household goods into it; and those used by his married daughter and son-in-law for housekeeping were also placed in the house. The goods were such as are generally used by..a family for housekeeping.' Members of both families occupied the house to a limited extent. They slept there occasionally, and did some work there, such as quilting. Some member of the family was there every day, sometimes only once, but often twice a day, and the tenant and his family so used the property, had full control of it, ■ and carefully watched and eared for it up to the time it was burned, though they usually slept and took their meals in a house near by, which belonged to the tenant.
What constitutes vacancy or non-occupancy of a building, is a question of law; butwhéther a building is vacant .or unoccupied, or not, within the meaning of the law, is a question of fact for the jury. To constitute occupancy of a dwelling house, it is not essential that it be continuously used by a family. The family may be absent from it for health,’ pleasure, business or convenience, for reasonable periods, and the house will not, on that account, be considered as vacant or unoccupied. In the case of the Insurance Co. v. Kiernan, 83 Ky., 468, it is held, “that the condition in a policy on’ a house described ‘ as occupied as a family residence, ’ containing a condition that it shallbeeome void if the house ‘shall become vacant or unoccupied, ’ the words ‘ occupied as a family residence ’ must be regarded as but a. representation as to the then use of the house, and the condition as but an undertaking- by the insured that thé house shall hot be without an occupant during the time covered by the policy; *22 and the condition is not broken or violated or the policy become void ‘ upon the house ceasing- to be occupied’ as a family residence, it continuing to be occupied by one person, who had access to the entire building for the purpose of caring for it.” The same doctrine is declared in Richards on Insurance, section 56, and in May on Insurance, section 247, where the authorities on the subject are cited. No rule is better settled than that such conditions in policies should receive a strict construction, and, when ambiguous, be construed most strongly against the insurer, for the reason, that they are prepared by, and inserted for the benefit of the insurer.
The condition o.f the policy in the present case . is not more specific, or comprehensive, in its requirements concerning the occupancy of the building insured, than the one involved in the Kentucky case. It declares that no liability shall exist under the policy for loss or damage to an unoccupied building, but does not stipulate that the insured building shall be used as a dwelling, or require any particular mode of occupancy. Strictly construed, occupancy for any lawful purpose would satisfy the condition, and preserve the obligation of the policy. At all events, it was not essential that the building should be put to all the uses ordinarily made of a dwelling, or to' some of those uses all of the time; nor that the whole house should be subjected to that use. Nor does it follow as a matter of law, that a dwelling house is to be considered as unoccupied, merely because it has ceased to be used as a family residence, where the household goods remain ready for use, and it continues to be occupied by one or more members of the family who have access to the entire building for the pur *23 pose of earing for it, and -who do care for it, and make some use of it as a place of abode.
Again, we think the court erred in the instruction given the jury, for another reason. The policy was issued since the adoption of the act of March 5, 1879, “to regulate contracts of insurance of buildings and structures” (Revised Statutes, sections 3643, 3644), which provides that “in the absence of any change increasing the risk without the consent of the insurer, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurers receive a premium shall be paid, and in case of a partial loss the full amount of the partial loss shall be paid.” The statute being in force when the policy was issued, became a part of the contract of insurance, and controls its construction and operation. The condition of the policy in regard to the occupancy of the building is therefore so qualified by the statute, that, in the absence of intentional fraud on the part of the insured, to make the change from occupancy, to disuse or want of occupancy available as a defense, it must appear that the risk was thereby increased. Insurance Co. v. Leslie, 47 Ohio St., 409. It is well settled that the risk is not necessarily, or prima facie increased, by the insured property becoming vacant or unoccupied. Biddle on Ins., sec. 654, May on Ins., 247; Richards on Ins., p. 166; Insurance Co. v. Hannawold, 37 Mich., 103. Baker v. Insurance Co., 46 Mich., 610; Lockwood v. Ins. Co., 47 Conn., 553. And, therefore, when the insurer pleads such change as a defense to an action on the policy, the answer must allege that the risk was increased on account of it, unless the insured was guilty of fraud. No doubt the va *24 cation or disuse of an insured building may in some cases materially increase the risk; in others it may not increase it any; and in some instancesthe circumstances may be such that the risk is lessened. Whether it is increased or not, in any case, must depend upon the situation’and surroundings of the building, the use which had been made of it, the care taken of it, and all the other circumstances, and is a question for the jury when put in issue. The second defense in the answer in this case is defective, in that it fails to allege the risk was increased by the change resulting from the breach of the condition pleaded; it tendered no material issue. That defense being insufficient, and the plaintiff having given evidence of the performance of the conditions precedent on his part, he might properly have had the verdict; no claim being made that he had been guilty of any intentional fraud.. Por each of the errors pointed out, the judgment of the common pleas, and of the circuit court will be reversed and the cause remanded.

Judgment accordingly.